# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANA F. BURGIN, Individually and as the Surviving Spouse of Carlton L. Burgin, deceased, and WILLIAM L. BURGIN, <br><br>Plaintiffs, <br><br>v. <br><br>RAYMOND L. LEACH, in his individual Capacity and in his Official Capacity as Deputy of the Pawnee County Sheriff's Department, MIKE WATERS, in his Individual and Official Capacity, THE PAWNEE COUNTY SHERIFF'S DEPARTMENT, and PAWNEE COUNTY BOARD OF COUNTY COMMISSIONERS, <br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 12-CV-0277-CVE-TLW |

## OPINION AND ORDER

Now before the Court are Defendants Raymond L. Leach, in his Individual and Official Capacity as Deputy of the Pawnee County Sheriff's Department, and Mike Waters, in his Individual and Official Capacity's [sic], Motion to Dismiss and Brief in Support (Dkt. # 4) and Defendants Pawnee County Board of County Commissioners and Pawnee County Sheriff's Department's Motion to Dismiss and Brief in Support (Dkt. # 5). Defendants Raymond L. Leach, a Pawnee County Sheriff's deputy, and Mike Waters, the Pawnee County Sheriff, seek dismissal of plaintiffs' claims against them in their individual and official capacities. The Pawnee County Board of County Commissioners (the Board) argues that it is not liable to plaintiffs under 42 U.S.C. § 1983, and it states that the Pawnee County Sheriff's Department is not a legal entity. Plaintiffs do not object to the dismissal of the Pawnee County Sheriff's Department as a defendant. Dkt. # 12, at 2. They also

do not contest the dismissal of their § 1983 claim against the Board, but they request leave to file an amended complaint asserting state law claims against the Board.[1] Id. at 3.

**I.**

On July 17, 2011, Carlton Burgin was driving his vehicle northbound on State Highway 48 in Pawnee County, Oklahoma. His father, William Burgin, was in the front passenger seat and Carlton Burgin's wife, Dana Burgin, was in the back seat. Leach was driving southbound on the same highway. Plaintiffs allege that a dispatch for a non-emergency domestic disturbance went out and Leach did not immediately respond to the dispatch. Dkt. # 2, at 8. According to plaintiffs, Leach chose to respond to the domestic disturbance call about 45 minutes later and he did notify the dispatcher that he would be responding to the call. Id. Plaintiffs claim that Leach turned on his emergency lights intermittently en route to the location and that he drove in excess of the speed limit. Id. Leach approached the intersection of State Highway 48 and Taylor Road, and plaintiffs claim that Leach was driving approximately 90 miles per hour. Id. at 9. Plaintiffs state that this section of State Highway 48 is a no passing zone because there is a hill sloping downward to the north. Id.

When Carlton Burgin saw Leach's vehicle, plaintiffs claim that Carlton Burgin moved his vehicle toward the right side of State Highway 48 and moved completely off the road. Id. Leach allegedly had to pull around another vehicle in the southbound lane and he crossed into the northbound lane. Id. As he did so, plaintiffs claim that Leach's vehicle "careened into an

---

[1] As will be explained below, plaintiffs' federal claims will be dismissed and the case will be remanded to state court. Plaintiffs are seeking to add a state law claim against the Board, and the state court should be permitted to consider whether plaintiffs should be granted leave to amend to assert additional state law claims.

uncontrollable slide" and crashed into the Burgins' vehicle. Id. Plaintiffs allege that the Burgins' vehicle spun around and traveled approximately 100 feet after the collision. Id. Leach's vehicle traveled further down State Highway 48 and collided with another vehicle that had moved off the road. Id. Carlton Burgin was pronounced dead at the scene of the accident, and Dana and William Burgin were taken to a hospital after suffering critical injuries. Id. at 10.

Dana Burgin, individually and as the surviving spouse of Carlton Burgin, and William Burgin filed this case against Leach, Waters, the Pawnee County Sheriff's Department, and the Board. Plaintiffs allege a state law negligence claim against Leach, and they also seek relief under § 1983 for Leach's alleged violation of their substantive due process rights under the Fourteenth Amendment to the United States Constitution. Id. at 10-12. Plaintiffs also assert § 1983 claims against Waters, in his individual and official capacities, the Pawnee County Sheriff's Department, and the Board for allegedly failing to train Leach or enact adequate policies concerning high-speed emergency driving. Id. at 13. The case was filed in the District Court of Pawnee County, Oklahoma. Id. at 6. Defendants removed the case to this Court based on federal question jurisdiction, because plaintiffs have alleged § 1983 claims against defendants.

## II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face"and the factual allegations "must be enough to raise a right to relief above the speculative level." Id.

(citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendants Leach and Waters argue that they are entitled to qualified immunity from suit as to plaintiff's claims against them in their individual capacities. Dkt. # 4, at 5-11. Leach argues that he does not have final policy-making authority over the operations of the Pawnee County Sheriff and he may not be sued in his official capacity. Id. at 12. Waters asserts that plaintiffs cannot maintain a § 1983 claim against him in his individual or official capacities if no underlying constitutional violation is established by the allegations of plaintiffs' petition. Id. at 12-13. The Board and the Pawnee County Sheriff's Department have also filed a motion to dismiss. Dkt. # 5. Plaintiffs concede that the Board's and the Pawnee County Sheriff's Department's motion should

4

be granted, but they request leave to file an amended complaint asserting a state law claim against the Board.  Dkt. # 12.

**A.**

Leach and Waters argue that they have qualified immunity as to plaintiffs' claims against them in their individual capacities.  The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's claims.  Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006).  The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity.  A plaintiff must allege that the defendant's actions violated a specific constitutional right and, if the plaintiff has alleged a constitutional violation, the plaintiff must show that the constitutional right was clearly established when the conduct occurred.  Toevs. v. Reid, 685 F.3d 903, 909 (10th Cir. 2012).  A court has the discretion to consider the steps in whatever order is appropriate under the circumstances.  Id. at 910 (citing Pearson v. Callahan, 555 U.S. 223 (2009)).  Plaintiffs bear the burden to prove that their constitutional rights were violated and that the law giving rise to their claims was clearly established at the time the acts occurred. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

Plaintiffs have asserted a § 1983 claim against Leach based on an alleged violation of their substantive due process rights under the Fourteenth Amendment to the United States Constitution. To allege a substantive due process violation concerning an executive abuse of power, a plaintiff

5

must state facts supporting an inference that the executive action "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) (quoting Collins v. City of Harker Heights, Texas, 503 U.S. 115, 128 (1992)). As stated by the Tenth Circuit, the "ultimate standard for evaluating a substantive due process claim is whether the challenged conduct 'shocks the conscience' of federal judges." Ruiz v. McDonnell, 299 F.3d 1173, 1183 (10th Cir. 2002). When applying the "shocks the conscience" standard, the Court must "bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: "(1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." Graves v. Thomas, 450 F.3d 1215, 1220-21 (10th Cir. 2006) (quoting Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995)).

In the context of an automobile accident involving a government vehicle, the leading Supreme Court case is Lewis. In that case, a passenger on a motorcycle was killed during a high-speed police chase and the passenger's parents filed a § 1983 claim against, inter alia, the police officer who caused the injury. Lewis, 523 U.S. at 837. The § 1983 claim was based on allegations that the police officer acted with deliberate indifference to the passenger's substantive due process right to life. Id. at 854. The district court granted summary judgment on the ground that there was no clearly established constitutional law giving rise to a § 1983 claim under the circumstances, but the Ninth Circuit reversed the district court's decision and held that the applicable standard to establish a substantive due process violation was deliberate indifference. Id. at 837-38. The Supreme Court held that a police officer is not liable for injuries caused during a high-speed chase unless the plaintiff can show that the police officer acted with an intent to harm. Id. at 853-54.

However, in circumstances when "actual deliberation" is possible, a deliberate indifference standard may apply when evaluating a police officer's conduct. Id. at 851. Even if the deliberate indifference standard applies, the Supreme Court was clear that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States" and, at a minimum, conduct that is conscience shocking must fall within the spectrum of egregious conduct somewhere less than intentional conduct but greater than negligence. Id. at 844-49.

The Tenth Circuit has provided guidance as to when the deliberate indifference standard may apply in cases involving a police or emergency response vehicle. In Perez v. Unified Government of Wyandotte County/Kansas City, Kansas, 432 F.3d 1165 (10th Cir. 2005), a motorist was killed when a fire truck responding to an emergency ran a red light and collided with an automobile coming from the opposite direction. Id. at 1165. The Tenth Circuit held that the intent to harm standard applied, even though the circumstances were distinguishable from a high-speed chase, because the driver of the fire truck was responding to an emergency call. "The intent to harm standard is not limited to situations calling for split-second reactions" but, instead, it applies "whenever decisions must be made 'in haste, under pressure, and frequently without the luxury of a second chance.'" Id. at 1167 (quoting Lewis, 523 U.S. at 853). In Green v. Post, 574 F.3d 1294 (10th Cir. 2009), a police officer was following a vehicle whose owner was suspected of driving away from a gas station without paying for gas, and the police officer entered an intersection at a high speed without turning on his vehicle's emergency lights or siren. Id. at 1296. The vehicle involved in the theft turned left and the police officer did not have time to stop, and the driver of the vehicle, Willis Green, was killed in the resulting collision. Id. at 1296-97. It was undisputed that the police officer was not involved in a high-speed chase and he was not responding to an

emergency. The Tenth Circuit applied the deliberate indifference standard to the plaintiffs' substantive due process claim, and defined deliberate indifference as a "middle level of culpability [that] encompasses conscious, deliberate indifference to an extreme risk of very serious harm to the plaintiff. By 'extreme,' we mean egregious or outrageous to the extent that it shocks the judicial conscience." Id. at 1303.

Plaintiffs rely on Terrell v. Larson, 371 F.3d 418 (8th Cir. 2004) (Terrell I), in which the Eighth Circuit found that a police officer responding as backup for a domestic disturbance call engaged in conduct that shocked the conscience when he entered an intersection during a red light while traveling 60 to 64 miles per hour. The police vehicle collided with a vehicle that entered the intersection and the driver of the other vehicle was killed. Id. at 421-22. The Court will not spend a substantial amount of time describing Terrell I, because the Eighth Circuit agreed to hear the case en banc and vacated the decision in Terrell I. In Terrell v. Larson, 396 F.3d 975 (8th Cir 2005) (Terrell II), the Eighth Circuit en banc found that the "intent-to-harm standard of *Lewis* applies to an officer's decision to engage in high-speed driving in response to other types of emergencies, and to the manner in which the police car is then driven in proceeding to the scene of the emergency." Id. at 979. To determine if police are responding to an emergency, a court must consider whether police "subjectively believed that they were responding to an emergency" and a court may not second-guess the police officer's assessment of the situation. Id. at 980. Even if the deliberate indifference standard had applied, the Eighth Circuit en banc did not find that police officer's conduct to be conscience shocking and noted that "[t]raffic accidents of this nature are tragic but do not shock the modern-day conscience." Id. at 981.

Construing the facts alleged in the petition in a light most favorable to plaintiffs, the Court will accept as true plaintiffs' allegations that this was not an emergency situation and that Leach did not notify the dispatcher that he was responding to the domestic disturbance call. Dkt. # 2, at 8. However, the allegations of the petition support an inference that Leach was driving to the scene of the domestic disturbance call and that he was engaged in police business at the time of the accident. Plaintiffs' primary allegation of Leach's driving misconduct is that Leach was driving at an excessive speed without constantly using his emergency lights. Id. Plaintiffs allege that Leach maintained a speed of approximately 90 miles per hour in a no-passing zone on a two lane, undivided highway "with a hill sloping to the north" and that Leach did not turn on his vehicle's emergency lights as he approached the intersection of State Highway 48 and Taylor Road. Id. at 9. However, it is reasonable to infer that oncoming traffic could see Leach's police vehicle and would perceive that Leach was acting on police business, because Carlton Burgin saw Leach's vehicle and he knew to pull off the road when he saw a police car approaching from the opposite direction. Id. As in Green, Leach was actively engaged in police business at the time of the accident but plaintiffs' allegations do not suggest that the circumstances were similar to high-speed chase or an emergency response in which actual deliberation were not possible.[2] According to plaintiffs, Leach made a delayed response to the domestic disturbance call and this supports an inference that he had time to deliberate before responding to the call. The Court finds that the facts alleged in the petition more

---

[2]  Defendants argue that it "is obvious from the facts presented in Plaintiffs' complaint that Defendant Leach had his emergency equipment activated prior to having to drive into the northbound lanes." Dkt. # 4, at 10. While such an inference could be drawn from certain allegations of the petition, plaintiffs specifically allege that Leach's emergency lights were not on at the time of the accident and the Court may not disregard the factual allegations of the petition when ruling on a motion to dismiss.

9

closely resemble those at issue in Green, instead of cases in which the intent to harm standard was applied, and the Court will apply a deliberate indifference standard when ruling on the pending motions.

Construing the well-pleaded allegations of the petition in a light most favorable to plaintiffs, the Court finds that plaintiffs have not alleged facts showing that Leach violated plaintiffs' constitutional rights. There is no doubt that there was a tragic accident, but the mere fact that the accident involved a police vehicle traveling in excess of the speed limit does not establish a constitutional violation. See Apodaca v. Rio Arriba County Sheriff's Dep't, 905 F.2d 1445, 1447 (10th Cir. 1990). To allege a substantive due process violation under a deliberate indifference standard, plaintiffs must allege that Leach acted with "an extreme risk of very serious harm" to the plaintiffs. Green, 574 F.3d at 1303. Plaintiffs argue that there was "absolutely no justifiable government reason for Leach to travel at seriously dangerous speeds (in excess of ninety (90) m.p.h.) and ignore traffic laws, including passing in a no passing zone" when making a delayed response to a non-emergency domestic disturbance call. Dkt. # 11, at 21. However, police officers routinely drive at speeds in excess of the speed limit when responding to calls, and the fact that Leach lost control of his vehicle when responding to a call does not remove this case from the realm of ordinary negligence. The Court also notes that plaintiffs allege that the accident occurred when Leach lost control of his vehicle while trying to avoid colliding with another vehicle. Dkt. # 2, at 9. This suggests that Leach was actively trying to avoid causing harm to others and that the accident resulted from an unintended loss of control over his vehicle. This tends to negate any inference that Leach's actions were so "egregious or outrageous to the extent that it shocks the judicial conscience." Green, 574 F.3d at 1303. The Court takes into account plaintiffs' allegations that

Leach had turned off the emergency lights on his vehicle and that he was in a no passing zone but, even considering these additional factors, the Court does not find that Leach's conduct showed such an extreme risk of harm to plaintiffs that it rises to the level of a substantive due process violation. As stated in Apodaco, plaintiffs may "dress up their claims" in attempt to allege something greater than negligence in an automobile accident case, but the "operation of a vehicle by a police officer does not rise to the level of a constitutional violation." Apodaca, 905 F.2d at 1446 n.3, 1447.

Even if the Court had found that plaintiffs had alleged facts that could give rise to a constitutional violation, Leach argues that the law was not clearly established and he would still be entitled to qualified immunity. Law is clearly established if "a reasonable official in defendant's situation would have understood that his conduct" violated a plaintiff's constitutional rights. Moore v. Guthrie, 438 F.3d 1036, 1042 (10th Cir. 2006). The Tenth Circuit has stated:

> Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. The plaintiff is not required to show, however, that the very act in question previously was held unlawful in order to establish an absence of qualified immunity.

Poolaw v. Marcantel, 565 F.3d 721 (10th Cir. 2009). "The pertinent question is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation.'" Klen v. City of Loveland, Colorado, 661 F.3d 498 (10th Cir. 2011) (quoting Bowling v. Rector, 584 F.3d 956, 964 (10th Cir. 2009)).

Plaintiffs state the "there is no doubt that the law was clearly established as of July 17, 2011 . . . that an officer responding to a non-emergency call, with time for actual deliberation, is liable under § 1983 if he acts with deliberate indifference to the health and safety of others." Dkt. # 11, at 25. Plaintiffs argue that Green was decided on August 7, 2009, and that this clearly established

the legal standard for substantive due process claims arising out of automobile accidents caused by police officers when responding to a non-emergency call. This description of the legal issue does not account for the novel argument being asserted by plaintiffs. Defendant does not dispute that the deliberate indifference standard applies to plaintiffs' § 1983 claim against Leach. Dkt. # 4, at 10. However, plaintiff is arguing that Leach was deliberately indifferent because he failed to follow ordinary traffic laws when making a delayed response to a domestic disturbance call that required a response from police. Plaintiffs have cited no cases suggesting that a police officer acts with deliberate indifference because he decides to drive faster than the speed limit when responding to a non-emergency call. In fact, the police officer in <u>Green</u> was not deliberately indifferent even though he entered an intersection during a yellow light and without his emergency lights activated. A reasonable police officer relying on <u>Green</u> could form a belief that strict compliance with the traffic laws is not required when responding to a non-emergency call. Thus, it was not clearly established at the time of the accident that a reasonable police officer would have known that it was unlawful to drive in excess of the speed limit and pass in a no passing zone when responding to a non-emergency domestic disturbance call, and Leach would still have qualified immunity from plaintiffs' individual capacity § 1983 claim even if a constitutional violation were adequately alleged.

Plaintiffs have asserted a § 1983 claim against Waters on the ground that he "failed to properly instruct, train and supervise Defendant Leach in emergency driving, enabling him to speed at unsafe rates under dangerous conditions . . . ." Dkt. # 2, at 13. To establish a claim of supervisory liability under § 1983, a plaintiff must plead and prove that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the

complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010). A supervisor cannot be held liable for implementing an unconstitutional policy or failing to train or supervise if no underlying violation of a plaintiff's constitutional rights occurred. Martinez v. Beggs, 563 F.3d 1082, 1092 (10th Cir. 2009); Graves, 450 F.3d at 1224. The Court has found that Leach did not commit a constitutional violation and, based on this finding, Waters is entitled to qualified immunity as to plaintiffs' § 1983 against him in his individual capacity.

Plaintiffs have also asserted claims against Leach and Waters in their official capacities. A § 1983 claim against a police officer and chief of police in their official capacities is treated as a claim against the municipality that employs the defendants. Graves, 450 F.3d at 1218. Under § 1983, a local government or municipality may be held liable for adopting an official policy or custom causing a violation of constitutional rights, but local governments can not be sued under a respondeat superior theory of liability. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). "[T]o establish municipal liability, a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." Graves, 450 F.3d at 1218. It is not enough for a plaintiff to allege that the actions of a governmental employee injured him. Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002). "Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." Seamons v. Snow, 206 F.2d 1021, 1029 (10th Cir. 2000). "However, liability will not attach 'where there was no underlying constitutional violation by any of [the municipality's] officers.'" Ellis ex rel. Estate of

13

Ellis v. Ogden City, 589 F.3d 1099, 1104 (10th Cir. 2009). In this case, the Court has found that plaintiffs have not alleged a violation of their constitutional rights, and their official capacity claims against Leach and Waters should be dismissed.

## IV.

Defendants also seek dismissal of plaintiff's state law claim against Leach, and plaintiffs request leave to file an amended complaint asserting additional state law claims. This case was removed to federal court on the basis of federal question jurisdiction, but the Court has found that plaintiffs' federal claims should be dismissed. Under 28 U.S.C. § 1367(c), a federal district court may decline supplemental jurisdiction when it has "dismissed all claims over which it has original jurisdiction." The Court recognizes that it has discretion to retain jurisdiction over a pendent state law claim in some circumstances. United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966). However, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Id. at 726; see also United States v. Botefuhr, 309 F.3d 1263, 1273-74 (10th Cir. 2002) ("a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial"). The sole remaining claim is a negligence claim against Leach, and plaintiff may also seek leave to assert additional state law claims against the Board. The parties' briefing suggests that there are unsettled questions of state law as to which defendant(s) may be liable to plaintiffs, and questions of Oklahoma law should be resolved by an Oklahoma court. See United Mine Workers, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties . . ."); Sullivan v. Scoular Grain Co. of Utah, 930 F.2d 798 (10th Cir. 1991) ("Declining pendent jurisdiction is appropriate when the court needs a 'surerfooted' analysis of state law in an area of particular importance to a state."). The

Court also notes that the parties will not begin taking depositions until December 2012 and the jury trial of this matter is set for May 2013, and this case has not progressed to such a late stage of the proceedings that it would be unreasonable to remand the case to state court. Dkt. # 22, at 2; Dkt. # 24. The Court declines to exercise supplemental jurisdiction under § 1367(c), and this case should be remanded to state court.

**IT IS THEREFORE ORDERED** that Defendants Raymond L. Leach, in his Individual and Official Capacity as Deputy of the Pawnee County Sheriff's Department, and Mike Waters, in his Individual and Official Capacity's [sic], Motion to Dismiss and Brief in Support (Dkt. # 4) is **granted** as to dismissal of plaintiffs' § 1983 claims against defendants Leach and Waters.

**IT IS FURTHER ORDERED** that Defendants Pawnee County Board of County Commissioners and Pawnee County Sheriff's Department's Motion to Dismiss and Brief in Support (Dkt. # 5) is **granted**.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to **remand** this case to the District Court of Pawnee County, Oklahoma.

**DATED** this 26th day of November, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE